BOARD OF COUNTY COMMISSIONERS OF DAY COUNTY v. STATE OF KANSAS.

(Filed September 5, 1907.)

(91 Pac. 699.)

1    EVIDENCE—Judicial Notice—County Seats De Facto—Validity of Court Proceedings. Courts of record in any county will take judicial notice of the county seat of such county, and, if the seat of public business in any county is the county seat de facto, such courts will take notice thereof, and the validity of the proceedings of such courts transacted at the county seat de facto cannot thereafter be questioned in a collateral proceeding.

2.   COURTS—Corrections of Record—Nunc Pro Tunc Order. A person interested in the proceedings of a court of record may appear before the court at any time and ask to have the journal of the

court made correct and complete as of the date such record should have been made, and the court should entertain and hear such motion upon notice given to those adversely interested. Where the default was that of the court or its officers, it is the duty of the court to make its record complete at any subsequent date when the default is called to its attention without the formality of a motion.

3.   **JUDGMENT—Res Adjudicata—Validity of Bond Issue.** Where a court of competent jurisdiction has determined the validity of the bonds involved in a proceeding provided by the statute, and has decreed that the bonds were valid obligations and issued in strict conformity with the laws of the territory, and no objection or exception was taken therefrom, the decree and judgment of the court is final and conclusive upon all matters put directly in issue, tried and determined in that proceeding. (Following **Territory v. Jones,** 9 Ok. 133, 59 Pac. 976.)

   (Syllabus by the Court.)

*Error from the District Court of Day County; before J. L. Pancoast, Trial Judge.*

Affirmed.

· *E. S. Sharp, Co. Att'y,* and *Cowgill & Dunn,* for plaintiff in error.

*C. C. Coleman, Att'y Gen'l,* and *John S. Dawson, Ass't,* for defendant in error.

STATEMENT OF FACTS.

This action was originally commenced in the district court of Day county, Oklahoma, by the defendant in error filing therein its petition, which, with exhibits attached and referred to in the petition, is as follows:

"The state of Kansas, the plaintiff herein, complains of the board of county commissioners of Day county, the defendant herein, and for its causes of action against said defendant says:

"That the state of Kansas is one of the states of the United States of America, and was admitted into the Union on January 29, 1861.

"That the defendant, the board of county commissioners of Day county, is the lawful executive and administrative body of Day county, Oklahoma, and that said Day county was organized

on or about ———— 1902, and is now, and at all times hereinafter mentioned was, one of the duly organized counties of the territory of Oklahoma.

"That by various acts of congress, the state of Kansas, plaintiff herein, was granted large tracts of land out of the public domain for the purpose of creating a fund, to be known as the agricultural college endowment fund of the state of Kansas, and providing that the said fund realized from the sale of said lands should never be diminished, but should be perpetual, and the principal sum of the said fund should be invested, and the interest money derived from such investments should be for the support of the Kansas State Agricultural College. That. in pursuance of said acts of congress, the state of Kansas has accumulated a large fund, to wit, five hundred thousand dollars; which is invested from time to time in municipal bonds, and interest thereon is devoted to the support of said college.

"That the defendant, the board of county commissioners of Day county, on July 10, 1900, in open court in the district court of said Day county, Oklahoma, at the lawful sitting of said court, ordered by the supreme court of the territory of Oklahoma to be held at Grand, Day county, Oklahoma, for the issue of county bonds, July 10, 1900, before the judge of said court, executed certain judgment funding bonds of said county, as more fully hereinafter appears, and the said bonds were then and there signed by the duly qualified and acting chairman of the board of county commissioners of said county, and the said bonds were then and there attested and signed by the duly qualified and acting county clerk of said court, and the said bonds were then and there signed by the duly qualified and acting judge of the district court of said county, and were then and there duly attested and signed by the duly qualified and acting deputy clerk of the district court of said county.

"Thereafter the bonds so executed as aforesaid were duly registered by the auditor of the territory of Oklahoma, and said auditor certified on the back of each bond aforesaid, under the seal of his office, that the said bonds were legal and regularly issued according to law. True copies of the said auditor's certificate of registration and of the legality and regularity of the issue of the bonds aforesaid are hereinafter set out in Exhibits B and C, attached hereto and made a part hereof.

"That the defendant issued the said judgment funding bonds as aforesaid and said bonds were made payable to bearer. and thereafter divers and certain of said bonds of said judgment issued of July 10, 1900, aforesaid, more fully hereinafter set forth, were bought in good faith in the open market by the loan commissioner of the State Agricultural College of the state of Kansas as an investment for the endowment fund of said college, for a valuable consideration; and out of an abundance of prudence and caution on the part of the said loan commissioner, before purchasing said bonds, the said loan commissioner required to be furnished to him a certified copy of all the papers on file in the office of the auditor of the territory of Oklahoma containing the history of the issue of said judgment funding bonds, and particularly showing the journal entry of the judgment upon which this issue of bonds were based, and particularly showing the amount of said issue, and particularly showing the total outstanding indebtedness of said Day county. and particularly showing the assessed valuation of said Day county, which copy of all the papers on file as aforesaid, in the office of the auditor aforesaid, was duly certified by the auditor of Oklahoma under the seal of his office, a true copy of which is hereto attached, marked Exhibit A, and made a part of this petition.

"That the bonds of this judgment funding issue so purchased as aforesaid by the loan commissioner as aforesaid are bonds num-numbered 11, 12, 13, 14, 15, and 16, for $1,000.00 each, and bond numbered 18 for $100.00, and all of said bonds so purchased as aforesaid are issued as of the date of July 10, 1900, and due July 10, 1910. A true copy of bond number 11 is attached hereto. marked 'Exhibit B', except as to numbering. A true copy of bond number 18 is attached hereto, marked 'Exhibit C', and made a part of this petition.

"That the bonds so purchased as aforesaid are the property of this plaintiff and the plaintiff is entitled to the interest thereon. The said bonds were issued with interest coupons attached, payable semi-annually, bearing six per cent. interest, and the defendant has paid with reasonable promptness to this plaintiff all interest coupons on the aforesaid bonds so purchased for its agricultural college endowment fund up to and including the interest coupons pertaining to the aforesaid bonds 11, 12, 13, 14, 15, 16, and 18 which matured on July 10, 1902; and the defendant has

made default in payment of all the interest coupons of said bonds numbered 11, 12, 13, 14, 15, 16, and 18 aforesaid which have matured since July 10, 1902, and the defendant has refused and still refuses to pay the same.

"FIRST CAUSE OF ACTION.

"Plaintiff refers to the allegations of this petition herein above set forth, and makes them all a part of this its first cause of action, and says:

"That on January 10, 1903, the interest coupon, number 5. of the aforesaid bond number 11, the same being the property of the plaintiff, became due and defendant made default; and demand was duly made for its payment, and defendant refused and still refuses to pay the said coupon. A true copy of said coupon is in words and figures as follows:

THIRTY DOLLARS

$30.00.                     Day County, Oklahoma Territory.

Day County, Oklahoma Territory, will pay to bearer the sum of thirty ($30) Dollars, on the 10th of January, 1903, at the Fiscal Agency of the territory of Oklahoma, in the city and state of New York. In the event of the discontinuance of said place, then at the Chemical National Bank in said city and state, for semi-annual interest, due on that date, on its judgment funding bond. Dated July 10, 1900.

No. 5.

EDSON L. MEAD,                          COSMO FALCONER,
County Clerk.                           Ch'm B'd Co. Com.

"Wherefore, there is due this plaintiff from the defendant, on this cause of action, the sum of thirty dollars on said coupon, and interest thereon at seven per cent. per annum since the maturity of said coupon set out in this cause of action."

Here follow causes of action numbered from second to forty-second. inclusive, of the same general character as the first cause of action, and the petition continues thus:

"That the aggregate sum of all the interest coupons due and unpaid as aforesaid in plaintiff's several causes of action above set forth against this defendant is $1,098.00.

"Wherefore, plaintiff prays judgment against said defendant in the sum of one thousand ninety-eight dollars, with interest on $183.00 thereof at the rate of 7 per cent. per annum from January 10, 1903; with interest on $183.00 thereof at the rate of 7 per cent. per annum from July 10, 1903; with interest on $183.00 thereof at the rate of 7 per cent per annum from January 10, 1904;

with interest on $183.00 thereof at the rate of 7 per cent. per annum from July 10, 1904; with interest on $183.00 thereof at the rate 7 per cent. per anuum from January 10, 1905; with interest on $183.00 thereof at the rate of 7 per cent. per annum from July 10, 1905, and for costs of this suit.

"C. C. COLEMAN, Attorney-general of Kansas, and JOHN S. DAWSON,

" Attorneys for Plaintiff."

"Exhibit A.

"In the District Court, Fifth Judicial District, and for Day County, Oklahoma Territory. In the Matter of the Funding of the Judgment Indebtedness of the County of Day and Territory of Oklahoma.

"Journal Entry.

"Now, on this 10th day of July, A. D., 1900, this matter came on to be heard, by the court upon application of the board of county commissioners of said county to make a showing and have the court determine the amount of the judgment indebtedness of said county and sign the judgment funding bonds to be issued·for paying same, and the board of county commissioners of said county, and the county clerk thereof and by the county attorney of said county, and by counsel and the following judgment creditors by counsel, to wit: Charles S. Hinchman, F. M. Hubbel, George Theis, Jr., and A. Ferguson.

"And the clerk of the district court, and the sheriff of Day county, being present, and the publication notice, required by statute being here made and approved.

"And the evidence having been heard by the court, the court finds the amount of judgment indebtedness of said Day county to be the sum of $16,738.23, which is wholly unpaid and owing to the several judgment creditors as follows, to wit:

Charles S. Hinchman, ..................................... $10,170.37,
F. M. Hubbell, ............................................... 5,845.60,
George Theis, Jr., ............................................ 618.40,
A. Ferguson, ................................................... 103.86.

"And the court further finds that said judgment creditors, and each of them and said board of county commissioners of said Day county have agreed that bonds should be issued by said board of county commissioners of said Day county and accepted by the creditors in satisfaction of said judgment, dollar for dollar, and that publication of notice required by statute prior to the applica-

tion to issue said bonds has been duly made, and that one-third of the judgment indebtedness of said county cannot be paid from the sinking fund in any one year by a levy of 5 mills on the dollar, as shown by the last preceding assessment of said county; and the court further finds that all things precedent to the issuance of said bonds have been duly done and performed, and the court further finds that the amount of outstanding bonded indebtedness to be the sum of $3,000.00, and the amount of outstanding legal judgment indebtedness to be the sum of $16,738.23. The court further finds that the aforesaid bonded indebtedness and the above valid judgment indebtedness does not exceed four per cent. of the assessed valuation of the taxable property of said Day county according to the last assessment valuation of the assessors for said county, and the bonds being presented, form and amount duly signed by the chairman of the board of county commissioners of Day county and by the county clerk of said county, the court is satisfied that they are of the class and character authorized by statute, and said bonds are approved in form, classes and amounts, and therefore said bonds are signed by the judge of said court to the amount as evidenced by the face therof, $16,738.23, sixteen thousand seven hundred thirty-eight and twenty-three one-hundredths dollars, and said bonds being signed are delivered to the county treasurer of said county in open court, and the same are receipted for to the judge of said court.

"JOHN L. McATEE, Judge.
"Attest: J. P. RENSHAW, Clerk District Court.
"By O. H. RICHARDS, Deputy."

"Territory of Oklahoma, Day County. ss.:
"I, J. P. Renshaw, clerk district court of the fifth judicial district of the territory of Oklahoma, do hereby certify that the within and foregoing to be a full, true and complete copy of the original journal entry in the matter of issuing bonds in said county on the 10th day of July, 1900, as the same now appears on file and record in my office, in the town of Grand, county of Day, and territory of Oklahoma.

"Witness my hand and official seal, at my office at Grand, in the county of Day and territory of Oklahoma.

"J. P. RENSHAW, Clerk District Court.
"[SEAL]          O. H. RICHARDS, Deputy.

"Office of Edson L. Mead, County Clerk, Day County.

"Territory of Oklahoma, Day County. ss.:

"I, Edson L. Mead. county clerk in and for Day county, Oklahoma, do hereby certify, that the assessed valuation of the taxable property in and for said county as shown by the last assessment of said county amounts to the sum of $501,156.00, five hundred and one thousand one hundred and fifty-six dollars; and that the total amount of outstanding indebtedness of said county of Day, from all sources, amounts to ($19,800.00) nineteen thousand eight hundred dollars.

"Given under my hand, whereunto I have affixed the seal of my office, this 10th day of July, A. D., 1900.

"EDSON L. MEAD,
"[SEAL]        .        County Clerk of Day County.

"Territory of Oklahoma, County of Logan. ss.

"I, S. M. Hopkins, auditor in and for the territory of Oklahoma, do hereby certify that the hereto attached and foregoing papers are a true and correct copy of all the papers on file in my office in the matter of the issuance of judgment funding bonds in the amount of $16,738.23, by Day county, Oklahoma, and further, that the sworn statement, as made by the county clerk to this office, shows the total outstanding indebtedness of said county amounts to $19,800 and the assessed valuation to $501,156.

"I further certify, that the omission of the judge's signature to the copy of the findings hereto attached was a mistake.

"In testimony whereof, I have this day set my hand and affixed the official seal of my office, at Guthrie, Okla., this 31st day of July 1900.

"S. M. HOPKINS, Auditor.
"[SEAL]

By E. P. McCABE, Deputy Auditor."

Exhibit .B.
"United States of America.
"Territory of Oklahoma.

"No. 11.                                                    1000 Dollars.

"Day County Judgment Funding Bond.

"Know all men by these presents:

"That the county of Day, in the territory of Oklahoma, acknowledges itself to be indebted,and for value received hereby promises to pay to the bearer the sum of one thousand dollars ($1,000),

lawful money of the United States of America, on the tenth day of July, A. D., 1910. However, this bond is subject to call and payment at any time at the option of said county, together with interest on said sum from date hereof, until paid at the rate of six per centum per annum, payable semi-annually on the tenth days of January and July respectively, in each year, upon presentation and surrender of the interest coupons hereto attached, as they severally become due, both principal and interest payable at the Western National Bank, in the city of New York and state of New York and for the prompt payment of this bond, with interest as aforesaid, at maturity, the full faith and credit of said county of Day, in the territory of Oklahoma, is hereby irrevocably pledged.

"This bond is issued by the said county of Day, aforesaid, for the purpose of funding and paying valid and existing outstanding judgments recovered against said county, in the courts of competent jurisdiction within the said territory of Oklahoma, and having jurisdiction both of the person of said county and of the subject-matter of the actions prosecuted against said county, resulting in the rendition of said judgments, and is issued by virtue of the authority conferred by article 11, chapter 5, of the Session Laws of the territory of Oklahoma, for the year 1897, being an act of the territorial assembly of said territory, entitled 'An Act Providing for the Issuance of Bonds in Payment of Judgments against Counties and other Municipal Corporations.' Approved on the 12th day of March, 1897, and subject to its provisions.

"And it is hereby recited, certified and warranted, that all acts, conditions and things required to be done precedent to and in the issuing of this bond have been properly done and performed in regular and due form required by law; and that said county has duly proved to the satisfaction of the district court of the county of Day and territory of Oklahoma, the existence, validity, force and legality of said judgment indebtedness, and that the said judgment indebtedness remains unpaid at the date of the issuance of this bond, and that an agreement has been made for the settlement of such judgment by the issuance of this bond, and that all other requirements of the said act aforesaid, together with all other requirements of law in the premises, have been duly complied with in the issuance of this bond and that no congres-

sional or statutory limitation of the amount of the indebtedness of said municipality is exceeded by this issue.

"In witness Whereof, the said county of Day and territory of Oklahoma has caused this bond to be signed by the chairman of its board of county commissioners and its county clerk, under the seal of said county, this tenth day of July, A. D., 1900, and the Honorable John L. McAtee, the judge of the district court of said county in open court, as the act of said court, has also signed these presents on the said day and date.

                                "COSMO FALCONER,
            "Chairman of the Board of County Commissioners.
"EDSON L. MEAD, County Clerk.
"Attest:
  "[SEAL]

"Signed in open court by the district court of the county of Day, Oklahoma Territory, this tenth day of July, A. D., 1900.
                            "JNO. L. MCATEE,
            "Judge of the District Court of Day County.
"Attest:
        "J. P. RENSHAW,
"Clerk of the District Court of Day County.
  "[SEAL]            By O. H. RICHARDS, Deputy."
    Indorsed on the back thus:
                    "Territory of Oklahoma.
            "Office of the Territorial Auditor.
    "I, S. N. Hopkins, auditor of the territory of Oklahoma, do hereby certify the within bond to be legally and regularly issued, and has been registered in my office this day, pursuant to an act of the legislative assembly of the territory of Oklahoma, entitled 'An act providing for the issuance of bonds in payment of judgments against counties and other municipal corporations,' approved March 12, 1897.

    "Witness my hand and official seal, done at my office in the city of Guthrie, Oklahoma Territory, this 12th day of July.
                    " S. N. HOPKINS, Territorial Auditor.
    "[SEAL]
                "By E. P. McCABE, Deputy."

    Also indorsed on the back thus:

    "No. 11, Day county, Oklahoma Territory, judgment funding bond. 1000 dollars. Dated July 10, 1900, due July 10, 1910.

Interest 6 per cent. per annum, payable semi-annually on the tenth days of January and July of each year, at the Western National Bank, in the city of New York and state of New York."

Exhibit C.

"United States of America.

"Territory of Oklahoma.

" No. 13.                                                          100 Dollars.

"Day County Judgment Funding Bond.

"Know all men by these presents:

"That the county of Day, in the territory of Oklahoma, acknowledges itself to be indebted, and for value received promises to pay to the bearer, the sum of one hundred dollars ($100), lawful money of the United States of America, on the tenth day of July, A. D., 1910. However, this bond is subject to call and payment at any time at the option of said county, together with interest on said sum from the date thereof, until paid, at the rate of six per centum per annum, payable semi-annually on the tenth days of January and July, respectively, in each year, upon presentation and surrender of the interest coupons hereto attached. as they severally become due, both principal and interest payable at the Western National Bank in the city of New York and state of New York, and for the prompt payment of this bond, with interest as aforesaid, at maturity, the full faith and credit of said county of Day, of the territory of Oklahoma, is hereby irrevocably pledged.

"This bond is issued by the said county of Day, aforesaid, for the purpose of funding and paying valid and existing outstanding judgments recovered against said county, in the courts of competent jurisdiction within the said territory of Oklahoma, and having jurisdiction both of the person of the said county and of the subject-matter of the action prosecuted against said county, resulting in the rendition of said judgment, and is issued by virtue of the authority conferred by article 11, chapter 5, of the Session Laws of the territory of Oklahoma, for the year 1897, being an act of the territorial assembly of said territory, entitled 'An act providing for the issuance of bonds in payment of judgments against counties and other municipal corporations.' Approved on the 12th day of March, 1897, and subject to its provisions.

"And it is hereby recited, certified and warranted, that all

Vol. 19—25

acts, conditions and things required to be done precedent to and in the issuing of this bond have been properly done and performed in regular and due form required by law; and that the said county has duly proved to the satisfaction of the district court of the county of Day and territory of Oklahoma, the existence, validity, force and legality of said judgment indebtedness, and that the said judgment indebtedness remains unpaid at the date of the issuance of this bond, and that an agreement has been made for the settlement of such judgments by the issuance of this bond, and that all other requirements of the said act aforesaid, together with all other requirements of law in the premises, have been fully complied with in the issuance of this bond, and that no congressional or statutory limitation of the amount of the indebtedness of said municipality is exceeded by this issue.

"In witness whereof, the said county of Day and territory of Oklahoma has caused this bond to be signed by the chairman of its board of county commissioners and its county clerk, under the seal of said county, this tenth day of July, A. D., 1900, and the Honorable John L. McAtee, the judge of the district court of said county, in open court, as the act of said court, has also signed these presents on the said day and date.

"COSMO FALCONER,
"Chairman of the Board of County Commissioners.
"Attest:
"EDSON L. MEAD, County Clerk.
"[SEAL]

"Signed in open court by the district court of the county of Day, Oklahoma Territory, this tenth day of July, A. D., 1900.
"JNO. L. MCATEE,
"Judge of the District Court of Day County.
"Attest:        J. P. RENSHAW,
"Clerk of the District Court of Day County.
"[SEAL]        By O. H. RICHARDS, Deputy."

Indorsed on back thus:
"Territory of Oklahoma.
"Office of the Territorial Auditor.
"I, S. N. Hopkins, auditor of the territory of Oklahoma, do hereby certify the within bond to be legal and regularly issued, and has been registered in my office this day, pursuant to an act of the legislative assembly of the territory of Oklahoma, entitled

'An act providing for the issuance of bonds in payment of judgments against counties and other municipal corporations,' approved March 12, 1897.

"Witness my hand and official seal, done at my office in the city of Guthrie, Oklahoma Territory, this 12th day of July.

"S. N. Hopkins, Territorial Auditor.

"[SEAL]                    By E. P. McCabe, Deputy."

Also indorsed on the back thus:

"No. 18. Day county, Oklahoma Territory, judgment funding bond. One hundred dollars. Dated July 10, 1900, due July 10, 1910. Interest 6 per cent. per annum, payable semi-annually on the tenth days of January and July of each year, at the Western National Bank, in the city of New York, and state of New York."

To which petition the defendant answered as follows:

"The defendant comes and for his answer to the plaintiff's petition filed herein denies each and every allegation therein contained, and not hereinafter admitted.

"For a second and further defense to plaintiff's petition the defendant alleges that the bonds numbered 11, 12, 13, 14, 15, and 16 and 18, and the interest coupons thereto, at the time attached, and of which the plaintiff at the time of bringing of this action claimed to be the owner, were not issued pursuant to any law or authority of the territory of Oklahoma, and were at all times and now are illegal and void and are not a binding obligation against this defendant. The defendant alleges that on the 10th day of July, 1900, the district court of the territory of Oklahoma was not in session, open or otherwise, and there was no sitting of the said court in said county in the month of July, 1900, and that no judgment indebtedness of said Day county, and particularly the indebtedness mentioned in Exhibit A to plaintiff's petition were proved by the defendant before the district court of said Day county, nor did the judge of said court thereof, in open session or otherwise, on the 10th day of July, 1900, or at any other time, find any amount of judgment indebtedness of said county to exist, and have effect and be in force against the said county; and that said district court, nor the judge thereof did not, on the said day, to wit, July 10, 1900, nor at any other time, in open session of said court, nor at all cause to be made on the record of said court, a statement and findings of the

evidence of any judgment or judgments and the said county, by and through its board of county commissioners in which the holders of said judgments agreed to accept, and the said county agreed to have issued the bonds in question in payment of said judgments or any of them in settlement of said judgments or any of them before the signing of said bonds by the judge of the said district court, nor at any other time, and that the said judge of the district court of said county was at the time of the signing of said bonds and at all times prior and subsequent thereto, without authority or jurisdiction to sign the same.

"For a third and further defense, defendant says that at all times mentioned in plaintiff's petition the county seat of Day county, Oklahoma Territory, was legally at Ioland, where the same had been established by the congress and the secretary of the interior of the United States, and that the district court of said county could only be legally held at said county seat, and that all notices and proceedings had about the issue of the bonds in question or other bonds should have been given from and referred to the said Ioland, the county seat of said county. That there was no term of the district court in the year 1900 held at said Ioland, the county seat of said county, nor was any notice given of any bonding proceedings nor the funding of any judgment indebtedness of said county into bonds to be had at said county seat. That no proof was made before the judge of the district court, in open court or otherwise, in said Ioland, the county seat of the said Day county, of any judgment indebtedness against said county, nor was any bonds issued or signed by the chairman of the board of county commissioners of said county at Ioland, in the county of Day, on the 10th day of July, 1900, or at any other time. That no finding was made by the district court of said county nor the judge thereof, in open session or otherwise, of any judgment indebtedness against said county of Day, and which he caused to be entered upon the record of said court at Ioland, the county seat of said county, or other place therein, and that all said bonds are void, and were at all times since their pretended issue; that the coupons sued upon herein are for interest accrued upon the principal bonds claimed to be held and owing by the plaintiff; that they derived their validity, if any, from the validity of the parent bond from which they were clipped.

"For a fourth and further defense, the defendant says that in

the month of July, 1900, the last assessed valuation of the property of said county for taxes was $469,289.77; that four per cent. of said amount is $18,771.54; and that said last named sum was the limit for which said county could become indebted in said year; that at the time of the pretended issue of said bonds in question, there were outstanding bonds of said county in the sum of $7,500.00, exclusive of interest, and warrant indebtedness in the sum of $5,700.00; and that said bonds and warrants were legal and valid issue of said county and part of its indebtedness; that at the time of the issue of the bonds in question, $16,800.00 were issued legally or illegally, and upon the coupons for interest of six of said bonds plaintiff seeks to recover in this action; that of moneys in the treasury of said county and belonging thereto, taxes levied and uncollected and all other property, money and resources belonging to said county at the time of the issuance of said bonds on July 10, 1900, was the sum of $5,700.00 and deducting said amount from the bond and warrant indebtedness of said county as aforesaid, the said county could only have issued on said date, to-wit, July 10, 1900, bonds to the amount of $11,200.00, whereas the said county issued $16,800.00 in bonds which amount exceeded the amount the county might have issued $5,600.00, and that $5,600.00 of said bonds are illegal and void.

"Defendant further says that because of the facts aforesaid the said county could not, at the time of the issue of the bonds in question, legally issue to exceed $11,200.00 of the bonds of said county and that the excess of said amount, to-wit, $5,600.00 was and is illegal and void for being in excess of four per centum. of the last assessed valuation of the property of said county for taxation preceding the issue of said bonds, and that said amount of illegal issue effects and enters into each of the bonds of said issue, and should be apportioned to and among each and all said bonds. That defendant makes the second count of this answer a part of this count.

"For a fifth and further defense and by way of cross-petition against the plaintiff, the defendant says that it has paid and the plaintiff has received interest paid on the seven bonds it holds and which are described in its petition, the sum of $122.00; that said interest payments were made under the mistaken belief of the defendant that the bonds on which it was paid were legal and binding obligations of the said county of Day for their face value,

and that since the discovery by the defendant that said bonds were illegal in whole or in part, the defendant has not paid any interest upon the same. The defendant says that it makes the second and fourth counts of this answer a part of this count.

"Wherefore, the defendant prays judgment against the plaintiff that the interest coupons sued on be decreed and adjudged illegal and void, and the petition of plaintiff be dismissed, and that the defendant recover the interest heretofore paid on said bonds in amount $122.00, and that if said bonds be found in part legal and part illegal, that the defendant have judgment that the interest paid on the amount of said bonds found to be illegal be credited on the interest due and owing thereon, for costs, and all other proper relief.

"E. S. SHARP, County Attorney, and COWGILL & DUNN,
"Attorneys for Defendant."

To which answer plaintiff replied as follows:

"Comes now the plaintiff and after leave of court first had and obtained, filed its amended reply to the defendant's answer in this cause. First, plaintiff denies each and every allegation in defendant's answer so far as the same are inconsistent with the allegations of plaintiff's petition. Second, replying further to defendant's answer plaintiff says that it relied implicitly and absolutely upon the recitals in the bond to which the coupons in controversy pertain, and relied implicity and absolutely on the recitals on the back of the bond as certified by the auditor of Oklahoma Territory."

After the issues in the cause were joined as heretofore shown, the cause coming on to be heard, the plaintiff filed the following motion for judgment upon the pleadings:

"Comes now the said plaintiff, the state of Kansas, and exhibits to the court the petition of the said plaintiff, the answer of the said defendant, and the reply of the plaintiff thereto, and shows to the court that the said petition of the plaintiff alleges and sets forth a good and valid cause of action against said defendants; and that all the allegations, averments and statements of the said answer are not sufficient to constitute any defense against the said cause of action of the plaintiff; and that it appears from the said petition and answer that the said defendant has no good, valid and sufficient defense to the said cause of action alleged in plaintiff's petition;

and that it appears from all the pleadings in said cause that the said plaintiff is entitled to judgment as prayed for in its petition. Now, therefore, said plaintiff moves the court for judgment in this cause upon the pleadings as prayed for in plaintiff's petition."

The cause came on to be heard before the court upon said motion for judgment upon the pleadings, and the court overruled the motion for reasons expressed in the argument, which as stated by the court was the fact "that the journal entry and the matter of funding the judgment indebtedness of the county is not on file, never has been filed, there is no filing marks, and has never been recorded, and the entire absence of any record as to a term of court at that time or any entry concerning the entry of judgment in that case."

While said cause was still pending and not finally disposed of, the court adjourned to the next day, and upon the reconvening of the court Mr. Darrow, attorney for defendant in error, read and presented to the court a motion asking that the journal entry in the matter of funding the judgment indebtedness of the county be entered upon the journal of the court *nunc pro tunc;* which motion was as follows:

"In the District Court of Day County, Oklahoma.

"In the Matter of the Funding of the Judgment Indebtedness of the County of Day and Territory of Oklahoma.

"Motion to Enter of Record the Journal Entry of Judgment Relating to the Issue of Day County Funding Bonds of July 10 1900.

"Comes now the state of Kansas, by C. C. Coleman, its duly qualified and acting attorney general, and John S. Dawson, its duly qualified and acting assistant attorney general, and shows to the court that the state of Kansas is the owner of certain judgment funding bonds of Day county, Oklahoma, issued July 10, 1900, in the district court of Day county, Oklahoma, under and by virtue of a judgment pronounced by said court on said date, in pursuance to a proceeding in said court invoked by the board of county commissioners in accordance with the laws of Oklahoma Territory, at a special sitting of said court at Grand, Day county, Oklahoma, designated and ordered by the supreme court of Oklahoma Ter-

ritory and by the honorable chief justice of said supreme court, and held in accordance therewith.

"And the state of Kansas is the *bona fide* holder in good faith of bonds 11, 12, 13, 14, 15, 16 and 18 of said issue, and is vitally and materially interested, both in law and in equity, in the matters involved in the proceeding whereby the judgment and other indebtedness of Day county was determined on said July 10, 1900, as aforesaid, and where the assessed valuation of the taxable property of said Day county, and the statutory limit of indebtedness which might be and was funded into judgment-funding bonds of said county were determined and adjudicated.

"And the state of Kansas further shows the court that the journal entry of judgment and findings of the district court of Day county, Oklahoma, is in the custody of the clerk of said district court of Day county, but for some reason unknown the said journal entry does not appear of record.

"Wherefore, the state of Kansas prays the court that the court now order the journal entry aforesaid to be entered of record in the records of the district court of Day county, and for such other precautions as may be necessary to preserve intact the proceedings of said court in the matter of the funding of the judgment indebtness of Day county, Oklahoma, had and done at the sitting of said court at Grand, Day county, Oklahoma, on July 10, 1900, as aforesaid.

"And the state of Kansas, your orator herein, as in duty bound, will ever pray, etc.

"THE STATE OF KANSAS.

"By C. C. COLEMAN, Attorney General of Kansas, and

"JOHN S. DAWSON, Assistant Attorney General of Kansas,

"Attorneys and Solicitors for the State of Kansas.

"Territory of Oklahoma, Day County, ss:

"John S. Dawson, being duly sworn, on his oath says, that he is assistant attorney general of the state of Kansas; that he is familiar with the matters set forth in the above motion; that all of the allegations and statements therein are true, so far as he knows positively, and as to all other matters therein set forth, he believes them to be true, and that your orator, the state of Kansas, is well entitled at law and in equity to the relief prayed for therein

"JOHN S. DAWSON.

"Subscribed and sworn to before me, a notary public of Day county, Oklahoma, this 27th day of March.

"C. B. Leedy, Notary Public.

"[SEAL.]

"My Commission Expires August 15, 1906."

Notice of a purpose to file such motion was on the day before the filing of the same served upon E. S. Sharp, county attorney, and W. H. Monser, county clerk of Day county. Upon the filing of such motion counsel for the plaintiff in error objected to the consideration of it for the reason that sufficient facts were not shown to justify the relief asked for. The court thereupon announced that he would hear the evidence, which offer was objected to by counsel for plaintiff in error, and the objection overruled. The court thereupon entered its judgment directing the recording of the journal entry of judgment of July 10, 1900, authorizing the issuance of funding bonds, the coupons of which bonds issued pursuant to and in compliance with the judgment of the court of July 10, 1900, are in issue in this case, which judgment of the court so entered was in words and figures as follows:

"And now, to-wit, on March 28, 1906, at a regular sitting of the above named court, the state of Kansas appeared by John S. Dawson, its attorney, and moved the court to enter of record the journal entry of judgment relating to the issue of Day county funding bonds of July 10, 1900, and the bond notice and publisher's affidavit thereto appertaining; and the said state of Kansas showed the court that the state aforesaid was the owner of certain of the bonds of Day county of the judgment funding issue of July 10, 1900, issued by the board of county commissioners of Day county, Oklahoma Territory, under and by virtue of a proceeding had before the above named court at the sitting of said Day county district court on said July 10, 1900, and that the said state of Kansas is vitally and materially interested and affected thereby.

"And it appearing that the said journal entry of the findings and proceedings had in said court on July 10, 1900, pertaining to the issue of Day county judgment funding bonds of said July 10, 1900, has been reduced to writing and is in the custody of the clerk of the district court of Day county, but the said journal entry has not been entered of record.

"And the court having been fully advised and informed in the premises and of all matters material and pertaining thereto it is therefore decreed, adjudged and ordered that the clerk of the district court do now and here record the said journal entry and bond notice aforesaid, pertaining to the issue of the Day county judgment funding bonds of July 10, 1900, in the matter as entitled above.

"J. L. PANCOAST, Judge Day County District Court."

This journal entry of the judgment of July 10, 1900, entered of record, is set out as Exhibit A of the plaintiff's petition. After hearing the motion to make the journal entry of July 10, 1900, this cause was further called for hearing upon the motion for judgment on the pleadings, and the court thereupon set aside its former order overruling the motion for judgment on the pleadings, and, upon reconsideration of the same, sustained said motion, and rendered judgment in favor of the plaintiff in the sum prayed for in the petition herein. Motion for new trial having been made and overruled, which prayed for a new trial upon the ground that the judgment was not sustained by sufficient evidence and for error of law occurring at the trial and excepted to at the time, the plaintiff in error, defendant below, brings the cause to this court praying a reversal for the errors complained of.

Opinion of the court by

GILLETTE, J.: This action having been determined in the court below upon a motion for judgment on the pleadings, and owing to the importance of the subject-matter, we have set out at length, in the statement of facts, the pleadings and proceedings had and considered upon the trial of the cause. It will be observed that, while the action is founded upon written instruments, the answer setting up such defense as the county of Day, plaintiff in error, had to the allegations of plaintiff's petition was not verified, by reason whereof the allegations of the petition, touching the execution of the instrument sued on, under the provisions of section 4312, Wilson's Ann. Stat., are taken as true. Such statute provides:

"In all actions, allegations of the execution of written instruments and endorsements thereon, of the existence of a corporation or partnership, or of any appointment or authority, or the correctness of any account duly verified by the affidavit of the party, his agent or attorney, shall be taken as true unless the denial of the same be verified by the affidavit of the party, his agent or attorney." By the pleadings in the case therefore, when the same was submitted to the trial court for consideration upon the motion for judgment on the pleadings, it was admitted: First, that Day county was a duly organized and existing municipal corporation of the territory of OklaLoma, as in the petition alleged; second, that on July 10, 1900, at a lawful sitting of said court the board of county commissioners, by authority of the court, executed the bonds, the coupons of which are herein sued on, and said bonds were signed by the chairman of the board of county commissioners of said county and attested and signed by the duly qualified and acting county clerk, and were thereafter signed by the duly qualified and acting judge of the district court of said county, whose acts were duly attested by the duly qualified and acting deputy clerk of said district court; third, that the coupons sued on herein were and are the coupons of the bonds so as aforesaid executed, and were signed by the chairman of the board of county commissioners of said county and attested by the county clerk. There was, therefore, such admission in the pleadings as to support a judgment based thereon, and the same must stand, unless the allegations of the answer present some fact touching the validity of the bonds and coupons presented by the petition which entitled the defendant to a hearing thereon. We will, therefore, notice and consider the allegations of the answer in connection with the admitted facts in the case.

The first allegation, that the bonds Nos. 11 to 18, inclusive, and interest coupons thereto attached, a portion of which coupons were not issued pursuant to any law or authority, and are therefore not a binding obligation, is not discussed in the brief of plaintiff in

error or insisted upon as a material ground of defense, nor can we see how such a defense can be made. The bonds recite that they are issued pursuant to the authority conferred by article2, chap. 5, of the Session Laws of Oklahoma for 1897, and the trial court, at the time of the rendition of its judgment in this case, took judicial notice of the provisions of such statute, which authorizes the issuance of municipal bonds of the character of the bonds and coupons in question.

The next material allegation of the answer was that no court was held in Day county, on July 10, 1900, the day on which the instruments sued on were by the district court authorized to be issued, and a judgment indebtedness found to exist which, under the authority of the statute, was authorized by the court to be funded into judgment funding bonds. By this plea, we take it that it was intended by the plaintiff in error to plead what is commonly termed *nul tiel record*, which is ordinarily proved by inspection of the record. The bonds, from which the coupons sued on were taken, as shown by the petition, recited the holding of the court July 10, 1900, and the authority of the court of that date to execute the same; and Exhibit A to the petition sets out the journal entry of that date fully authorizing the execution of the bonds, to which journal entry was attached the certificate of the clerk of the court, that such journal entry was correct. There was, however, no record upon the journal of the court of a session of the court held on that date, and the journal entry attached to plaintiff's petition and certified as correct nowhere appeared on the records of the court. When under this plea the conditions of this record were called to the attention of the court, the motion for judgment upon the pleadings was overruled, and further proceedings in the case temporarily suspended, during which time a motion was made and filed in the court by the defendant in error, asking to have entered upon the records of the court *nunc pro tunc* journal entry of the judgment of July 10, 1900, authorizing the issuance of the bonds. Notice was served upon the county attorney and county clerk of the

pendency of such motion, at that time, and a hearing was had thereon the next day. The plaintiff in error appeared as to said motion, upon which hearing it was made to appear that the journal entry of July 10, 1900, was among the files of the court, but had never been entered of record, and testimony was offered showing a session of the court on that day, to-wit, July 10, 1900, at which time a hearing was by the court had upon the question of the issuance of the bonds of the county to fund the judgment indebtedness against the county. As a conclusion of the hearing, and by reason of the facts shown to exist, the court ordered the journal of the session of July 10, 1900, to be made of record then. Upon such record being made, the motion in this case for judgment upon the pleadings was renewed, and such motion sustained.

It is urged by the plaintiff in error that it was error to order the journal entry of July 10, 1900, to be made of record at that time *nunc pro tunc*  But we are unable to see or understand how such question can be considered in this case. No such order was made in this case, nor was the motion to enter the journal entry of July 10, 1900, filed in this case. Such motion was entitled, "In the matter of the funding of the judgment indebtedness of the county of Day and territory of Oklahoma," which was followed by the words "Motion to enter of record the journal entry of judgment relating to the issue of Day county funding bonds of July 10, 1900." The motion thereafter sets forth that it is made by the attorney general of the state of Kansas, who appeared on behalf of the state as owner of the funding bonds of Day county issued July 10, 1900, by authority of the honorable district court of that county, and asks that an order *nunc pro tunc* be entered of the journal of July 10, 1900, showing the authority of the court to issue the judgment funding bonds which were issued of that date. The motion was verified as to its allegations. An appearance was entered in the matter of such pending motion by counsel for Day county, and it was then heard by the court, resulting in the order, as above stated, directing the record of the proceedings of July 10,

1900, to be then made. If there was any error committed in the matter of such proceedings, such error can be reviewed only by an appeal of the cause to which they relate. Such proceeding was no part of this case, and, as no appeal was taken from the order of the court directing an entry of the journal of July 10, 1900, such journal must stand of record with the same force as if recorded the date on which the judgment was found. We may say, however, touching such procedure, that we know of no reason why a person interested in a judgment of a court of record should not appear before the court at any time and ask to have the journal of the court made correct and complete as of the date such record should have been made. and, we think, the court should entertain and hear and determine such motion upon due notice to those adversely interested, and where, as in this case, the default originally was 'that of the court and its officials, and not of the party, we think it the duty of the court to make its records complete at any subsequent date when the default is called to the court's attention, and that this may and should be done when justice demands, without the formality of a motion, as the court upon its own motion may and should make its record complete. *Mitchell v. Overman*, 103 U. S. 65; *Borer v. Chapman*, 119 U. S. 596. It will be noticed that this procedure by which the journals of the court of July 10, 1900, were by order of the court made of record, took place while the action under consideration was pending, and, we think, that if the making of such record changed the defense of the plaintiff in error, or was a matter of such surprise as that further procedure in the case could not then be reasonably had, the plaintiff in error would have been entitled to a continuance or any necessary delay of the proceedings; but none was asked, and no appeal was taken from the *nunc pro tunc* order. The record made pursuant to such order must stand as the record of the court of July 10, 1900, and was a record of the court when the plea of *nul teil record* was overruled, and judgment was entered upon the motion for judgment on the pleadings. The plaintiff's peti-

tion sets forth the journal entry of July 10, 1900, and, as the plea of *nul teil record* is ordinarily determined by the record, such record having been made complete, the court had before it upon the pleadings and the record all the facts necessary to a final determination of that plea.

The third defense presented by the answer of the plaintiff in error is that the county seat of Day county was established by an act of congress at Ioland, and that the district court of said county could only be legally held at such county seat, and that no court was held at Ioland on July 10, 1900, and no proceedings were there had in the district court of Day county touching the funding of the county's indebtedness. It appears from the record that on July 10, 1900, the session of the district court of Day county was held at Grand instead of at Ioland, and was being held at Grand at the time this case was heard. Under the provisions of the organic act of the territory of Oklahoma, it is made the duty of the supreme court to define the judicial districts of said territory, and to fix the time and place of each county seat in each district, where the district court shall be held, and designate the judge who shall preside therein. An order of the supreme court, therefore, fixing a term of court is made pursuant to the requirements of the organic act. A term of court in any county is only held pursuant to an order of the supreme court fixing such terms. From the record before us it appears that the supreme court of the territory had, prior to July 10, 1900, fixed a term of court for Day county for that date, and had fixed the place at Grand, and specified that such term was for the issue of county bonds. As the courts of this teritory are organized, we think that judicial notice of such an order may be taken, for it is equivalent to a statute fixing a term of court, and the journal entry of a proceeding had in the court on that date is sufficient to establish the fact that the court was held pursuant to such order. All this was before the court when it finally considered the motion for judgment on the pleadings as fully as though the same had

been established by testimony introduced for that purpose, and was probably so established as that it could not be disputed by oral testimony admissible under the pleadings; for courts will take judicial notice of their own sessions. That the term of court was held at Grand instead of at Ioland may, therefore, be regarded as settled. That Grand was the place where all the public business of Day county was and is transacted was and is a matter of such public notoriety that the court and all persons interested would take notice of, and would not and could not question or ignore it. That Ioland was the originally established county seat, is also a fact beyond controversy. That Ioland has been abandoned as a townsite for many years, and was so abandoned prior to the year 1900, is a matter of such general knowledge as that it would seem to be trifling with justice to presume that there was any controversy over the question as to where the actual seat of justice for the transaction of public business for that county was located. There remains, therefore, only the question as to whether or not the determination of the court sitting at Grand in the county of Day was a binding and conclusive determination as against parties litigant, appearing in the court and without objecting at the time, and submitting to the court their controversies to be determined by it. If Ioland was the county seat *de jure*, Grand was the county seat *de facto*, and this the district court of Day county, being a court of general jurisdiction, would take judicial notice of, and the validity of the proceedings had could not be questioned in a collateral proceeding.

In a case almost identical with this case, the supreme court of Colorado used the following language (*In re Chas. Allison*, 22 Pac. 820, 10 L. R. A. 790):

"No issue made with the definition usually given, that a 'court' consists of 'persons officially assembled under authority of law, at the appropriate time and place, for the administration of justice'; nor is it denied that the place of meeting is an important element in the definition. We shall maintain the proposition that, under the admitted facts before us, there was a *de*

*facto* location of the county seat at the town of Conejos, and that, therefore, the judgment under consideration is not vulnerable in the present proceeding. For more than twelve years Conejos has been regarded as the lawful county seat. During this period, unquestionably it has been the county seat in fact; that is, the county buildings, offices and records have, without exception, been at that place, and the county business, including that of the district and county courts, has all been transacted there. The people of the state and different departments of the state government have recognized Conejos as the place where the county seat was lawfully established. No direct judicial proceeding has ever been instituted for the purpose of determining the legality of such location in fact, or for the purpose of restoring the county seat to Guadaloupe. On the contrary, the inhabitants of the county, so far as we are advised, have universally acquiesced in this disposition of the county seat. During these twelve years property has been bought and sold, and public moneys have been expended in permanent improvements at the town of Conejos, upon the strength of its being the county seat. Estates of deceased persons have been there administered upon, and the interests of minor heirs have been there adjudicated. At that place property rights of all kinds have been litigated and determined, and criminals have been tried, convicted, sentenced, and executed, or sent to the penitentiary. In this state, the power to locate and remove the county seat is lodged by the constitution exclusively with the inhabitants of the county. They may, by a popular vote, establish or change the county seat at will, save that removals cannot be made oftener than once in four years. Their absolute power over the subject is restricted only by the limitation mentioned, and the statutory regulations prescribing the manner of calling and conducting the election. The knowledge of the inhabitants of Conejos county that the county seat had in fact been removed from Gaudaloupe, and established at the town of Conejos, cannot be questioned, nor can we presume that, while acquiescing during twelve years in the change they have been ignorant of the manner in which it took place; and, since the entire control of the subject has always been in their hands, we are inclined to the view that their conduct in the premises should be treated as such a confirmation of the unauthorized transfer, or at least such a waiver of objection thereto, as justifies an application of the *de*

*facto* doctrine, so far as judicial proceedings that have taken place under all the forms of law at the town of Conejos are concerned. This conclusion is reinforced by the facts above narrated, showing a universal outside recognition of Conejos as the *de jure* county seat during the long period mentioned. We are aware of no principal of law that compels us to hold all such proceedings void and thus entail the appalling consequences that would inevitably follow. We do not hold that there may be a *de facto* court, although this view has been vigorously and ably maintained. *Burt v. Winona & St. P. R. Co.,* 31 Minn. 472, 4 Am. & Eng. Corp. Cas. 426, and note.

"When a court or office is created by statute, and when the statute creating it is unconstitutional, there is no *de jure* court or office, as the case may be (*Ex Parte Stout,* 5 Colo. 509), and under such circumstances, we have the highest authority for the view that there can be no *de facto* court or office (*Norton v. Shelby County,* 118 U. S. 425, 30 L. Ed. 178).

"But we are here dealing with a court unquestionably *de jure* so far as its establishment and organization are concerned—a court presided over by a judge, the legality of whose title and office is not challenged—and our position is simply that, though a county seat may have been originally unlawfully removed, but subsequent circumstances may supervene which authorize the view that the proceedings of such a tribunal at the place of relocation are valid, and forbid litigating collaterally, by habeas corpus, the regularity of the removal.

"The foregoing views do not conflict with those expressed by *Coulter v. Routt County Comr's,* 9 Colo. 258, 11 Pac. 199. A general law exists, as already suggested, providing that the district court shall be held at the county seat of the various counties. The special act considered in the Coulter case applied to the county of Routt alone. It provided for holding the terms of the district court at the town of Yampa, which was not and never had been a county seat. This court held that the act conflicted, in this respect, with the constitutional provision inhibiting special legislation 'regulating county and township affairs.' Thus it will be seen that the decision is not in conflict with the view that when the county seat itself is removed, though the removal be *de facto* merely, the place of holding the court may, under circumstances like these here presented, also be changed."

See also *Watts v. State,* 22 Tex. 572; *Robinson v. Moors,* 25 Ill. 135; 11 Cyc. page 368 (4); 7 Am. & Eng. Cy. of Law, page 1045.

If there is any controversy concerning the county seat of Day county and the power of officials to transact public business at Grand instead of at Ioland, such controversy can be settled only in a direct proceeding for that purpose. Questions of this character have often been before the courts, and it has been the universal holding that the judgment and conclusions of courts of record cannot be collaterally attacked upon the ground that the court at the time of the transaction of the business was not held at the county seat or place designated for the holding of such court, unless the question is presented in the case and at the time of the hearing complained of. In this case, which is an action to recover upon the coupons of bonds of Day county, the execution of which was authorized by the judgment of the district court of said county, it is sought to question their validity because of the fact, as alleged, that the district court, when it authorized the execution of such bonds, was sitting at Grand instead of at Ioland. The recitations of the bonds, as well as the allegations of the journal entry authorizing their execution, show that the proceedings in the court, as a conclusion of which such bonds were authorized, were begun and had upon the application of the board of county commissioners of said county, and it appears that, pursuant to such proceeding and judgment, certain judgments of record were funded into the bonds, the validity of which are here brought in question. It would be a proceeding at right angles with equity and justice to say that the county might institute a proceeding of this kind and carry it through the courts at Grand, and, after the statute of limitations had run against the judgments funded, defeat liability upon the bonds because the proceeding in court, which the county, through its board of commissioners, was a party to, was not held at Ioland. Such considera-

tion seems to illustrate the soundness and justice in the rule of the courts that the judgment of a court of record cannot be collaterally attacked, and can only be questioned by a proceeding in error, or by some authorized direct proceeding for that purpose. From these considerations we are of the opinion that the district court did not err in refusing to consider the defendant's third ground of defense and in rendering judgment for the plaintiff notwithstanding the grounds of defense therein stated.

One other ground of defense, the fourth, as set forth in defendant's answer, remains for consideration, which in substance is that the bonds issued were in excess of four per cent. of the last assessed valuation of the taxable property in the county. The answer alleges that such valuation was $469,289.77, and that, considering the outstanding indebtedness of the county not funded, together with taxes levied and uncollected, and all other property, money, and resources belonging to said county July 10, 1900, not more than $11,200.00 of the bonds of said county could, at that time, have been lawfully issued, and that, therefore, $5,600 of such bond issue was illegal and void. By this defense the defendant seeks to try over again a question that was of paramount importance and before the court for consideration when it authorized the issuance of the bonds July 10, 1900. The record shows that at the time the court authorized the issuance of said bonds it found that the amount, including outstanding indebtedness, did not exceed four per cent. of the assessed valuation of the taxable property of Day county, according to the last assessment valuation of the assessor of said county; and the question here presented is whether or not that question may be retried in this action for the purpose of defeating a part of the bond issue of July 10, 1900. Touching this question, this court, in the case of the *Territory v. Hopkins*, 9 Okla. 149, 59 Pac. 980, said: "The court having determined the validity of the bonds involved in this proceeding and having decreed that they are valid obligations and issued in

strict conformity with the laws of this territory, and no objections or exceptions having been made to the issuance thereof, and no appeal having been taken therefrom, the decree and judgment of the court is, therefore, final and conclusive upon all matters put directly in issue, tried, and determined in that proceeding. This doctrine has been clearly annunciated and uniformly upheld by the decisions of the supreme court of the United States." The soundness of this determination by this court is questioned by counsel for plaintiff in error, who base their conclusions upon the proposition that the district court, when hearing a question touching the issuance of funding bonds, does not reach a conclusion which in effect amounts to a judgment. If this is a correct conclusion, we can see no purpose in having the question of the issue of bonds brought before the court at all. Under the statute the court must hear and determine the question as to whether or not the issuance of such bonds are authorized under the law, and it would seem that when a court of competent jurisdiction has before it a legal question to determine, and has heard and determined that question, such determination, unappealed from, is thereafter *res adjudicata.*

It is urged that the judgment of the court of July 10, 1900, authorizing the issuing of the funding bonds in question, was not a judgment in the sense in which that expression is used, and that there was no judgment until it was entered upon the order made *nunc pro tunc.* The finding of the court July 10, 1900, was embodied in a journal entry of that date and was signed by the judge hearing the case and recited the things that were found and determined. It was a judgment as to all the intents and purposes and upon all the questions submitted to and necessary of determination by the court in order to authorize the further action had, to-wit, the issuance of the bonds. It is true it was not that character of judgment which authorized or required an execution to issue for its enforcement, but it was nevertheless a judicial de-

termination of the existence of facts necessary to the execution of the bonds, and which facts when determined were conclusively and finally determined, unless apealed from. Such determination cannot thereafter be attacked except for fraud or want of jurisdiction. Such judgment or conclusion was executed when the bonds were signed. The entry of the judgment upon the journal of the court at a subsequent date probably served no purpose other than to make the record of the court complete in that respect.

With these questions settled, was there such evidence before the court as to justify the rendition of a judgment upon the pleadings? That the plaintiff was an innocent purchaser of the bonds is not questioned. Such bonds and coupons were negotiable instruments and passed by delivery. They were past due when the action was brought and liability thereon was denied and payment refused. The petition of the plaintiff set forth the particular bonds the coupons sued on belonged to. The recitals in the bonds from which the coupons were taken were that they were issued pursuant to the laws of Oklahoma. They bore the unquestioned signature of the officials of Day county, together with that of the judge of the district court of that county, attested by the clerk and seal of the court; also, the endorsement on the back, by the territorial auditor, who certified such bonds to be legally and regularly issued in accordance with an act of the legislature of March 12, 1897. It has been the universal holding of the courts that where negotiable bonds or securities on their face import by recital a compliance with the law under which they were issued the purchaser is not bound to look further for evidence of compliance with the law authorizing their execution. In this case they were not only issued as the act of the officials of Day county, but, in addition, the bonds recite that they are issued as the act of the district court, and, therefore, go upon the market as instruments the authority to issue which has been judicially determined. As to the effect of such recitals, and the fact that the plaintiff

in error is bound thereby, see 62 U. S. 539, *Knox v. Aspinwell;* 99 U. S. 86, *Hackett v. Ottawa;* 105 U. S. 342, *Ottawa v. National Bk.;* 103 U. S. 683, *Walnut v. Wade;* 89 Fed. 619, *Waite v. Santa Cruz;* 65 U. S. 287, *Bissell v. Jeffersonville.*

From the record before us it is apparent that the bonds to which the coupons in question belong were regularly issued for the purpose of funding the judgment indebtedness of Day county, that when issued they were authorized by the determination of the district court of Day county, that they have passed to the plaintiff, an innocent purchaser, and that the county is liable for the full face value thereof; and we conclude that the district court did not err in the rendition of the judgment complained of.

The judgment of the district court will, therefore, be affirmed.

Pancoast, J., who presided in the court below, not sitting; Irwin and Garber, JJ., absent; all the other Justices concurring.