BOARD OF EDUCATION OF TOWN OF CARMEN, OKl., et al. v. JAMES.

BOARD OF EDUCATION OF TOWN OF HELENA, OKL., et al. v. SMITH.

Nos. 335, 336.

Circuit Court of Appeals, Tenth Circuit.

March 30, 1931.

W. Adelbert Dillon, of Cherokee, Okl., M. K. Cruce and Ben Franklin, both of Oklahoma City, Okl., and A. J. Titus and Ira A. Hill, both of Cherokee, Okl., for appellants.

Eugene Jordan, of Tulsa, Okl., and Chas. E. McPherren, J. D. Lydick, and Hayes, Richardson, Shartel, Gilliland & Jordan, all of Oklahoma City, Okl., for appellees.

Before COTTERAL, PHILLIPS, and McDERMOTT, Circuit Judges.

PHILLIPS, Circuit Judge.

## Opinion in No. 335.

Heberd James, as the owner and holder of ten funding bonds and interest coupons attached thereto, dated January 25, 1921, and issued by the board of education of the town of Carmen, Alfalfa county, Oklahoma, brought this suit against such board of education, the excise board of Alfalfa county, and the officers and individual members of such boards to secure a mandatory injunction enjoining and restraining such boards, officers and individual members from taking funds in the sinking fund of such board of education created to pay the principal and interest of such bonds and diverting them to other purposes; from refusing to perform their legal duty to make an itemized statement of the estimated needs of such board of education to pay the interest maturing on such bonds and to create a sinking fund for the purpose of paying the principal thereof at maturity; from refusing to make an appropriation for such sinking fund; from refusing to compel the collection of tax levies to pay such interest and create such sinking fund; from asserting any defense to such funding bonds under the decision of the Supreme Court of Oklahoma in Eaton v. St. Louis-San Francisco Ry. Co., 122 Okl. 143, 251 P. 1032; and from refusing to pay such principal and interest according to the tenor of such bonds, and for a decree establishing the validity of such bonds and plaintiff's title thereto.

Jurisdiction is predicated upon diversity of citizenship.

The facts, as disclosed by the admissions in the pleadings and the agreed statement of facts, are as follows: On January 25, 1921, in a cause pending in the district court for Alfalfa County, Oklahoma, entitled "Buxton v. Independent School Dist. No. 77" (the Carmen district), and numbered 2046, a judgment was entered in which the court found that the school district was indebted to Buxton in the sum of $13,500, and adjudged that Buxton have and recover judgment against the school district for that amount, with interest at 6% from the date thereof. The board of education voluntarily entered its appearance in that cause and admitted that the indebtedness sued on was due and unpaid.

On March 7, 1921, there was filed in the district court of Alfalfa County an action styled "In The Matter of the Application of Board of Education of Town of Carmen,

Alfalfa County, in the State of Oklahoma, to Determine the Existence, Character and Amount of Its Legal Outstanding Judgment Indebtedness, and to Issue Its Bonds to Fund the Same," and numbered 2066. On the same day, a judgment was entered in such proceeding which, with the exception of the caption, is fully set out in marginal note 1.

Plaintiff is the holder and owner of bonds Nos. 3 to 12, inclusive, and coupons Nos. 14 to 40, inclusive, attached to each of said bonds.

[1] On this 7th day of March, 1921, the same being one of the days of the March term of said Court, appeared the Board of Education of the town of Carmen, Alfalfa County, State of Oklahoma, through its proper officers, and made proof to the satisfaction of this court, that heretofore the Board of Education Town of Carmen authorized a proceeding in this court to fund the outstanding judgment indebtedness of said Board of Education the sum of $13,500.00, by a resolution duly proved to have been adopted and approved as required by law.

That notice of the issuance of said bonds was published in a newspaper, published at the County Seat of said County, and posted in five public places in said County for at least ten days preceding this time said notice stating that on the 7 day of March, 1921, or as soon thereafter as a hearing may be had the said Board of Education will proceed before this Court and make a showing and ask this Court to order and determine the amount of the outstanding legal judgment indebtedness of said Board of Education and to sign bonds to be issued in payment of same and provided that all persons interested might be present at the time said proof was made.

That the said Board of Education, through its proper officers proved from the records of said Board that the outstanding judgment indebtedness of said Board is the sum of $13,500.00 and that said judgment is due and that no part of same has been paid. Upon said proof being made it is hereby ordered and adjudged by this Court that the said court finds and orders, that the said Judgment indebtedness, aggregating the principal sum of $13,500.00, together with interest thereon accruing since said judgment became payable and payment refused for want of funds, amounting in the aggregate to the sum of $13,500.00 is hereby found and declared to be a legal indebtedness of the said Board of Education and subject to being funded pursuant to the statutes of the State of Oklahoma, and the Judge of this Court does now proceed in open court to sign each bond up to the amount of the indebtedness so found and approved, said bonds being described as follows:

Bonds numbered from One to Thirteen, both inclusive, of the denomination of $1,000.00 each, dated January 25, 1921, due January 25, 1941, bearing interest at the rate of six per cent per annum.

Bond Number Fourteen of the denomination of $500.00 dated January 25, 1921, bearing interest at the rate of six per cent per annum.

And the Court now delivers the bonds so signed to the Clerk of said Court to be by him delivered to the Treasurer of said Alfalfa County, after the time for taking an appeal has expired if no appeal be taken, and the Clerk of said Court is directed to cancel the judgments funded by said bonds; and the treasurer of said Alfalfa County is directed to cancel the warrants funded by said bonds, the said judgment hereby approved, cancelled and funded, being described as follows:

Court　Case No.　Rendered　Creditor　Amount
District　2046　1-25-21 Grant M. Buxton $13,500.00

Witness, Honorable J. C. Robberts, Judge of said Court, and seal of said Court affixed at Cherokee, the County Seat of said County on this 7th day of March, 1921.

Attest: J. W. Rackley, Court Clerk [Seal.]

Bond No. 3 of the thirteen bonds authorized by such judgment, the certificates affixed thereto, and coupon No. 14 attached thereto, are set out in marginal note 2.

[2] Number　　　　　　　　　　　Dollars
3　　　　　　　　　　　　　　　$1,000.00
State of Oklahoma, County of Alfalfa
The Town of Carmen

Being Independent School District No. 77
Funding Bond of 1921.

Know All Men by These Presents: That the Board of Education of the Town of Carmen, of the State of Oklahoma, a body corporate, duly organized and existing as the corporate authority of the School district comprising said Town and the territory thereto attached for school purposes, hereby acknowledges itself indebted to and for value received, promises to pay to the bearer the sum of One Thousand Dollars on the 25th day of January, A. D. 1941, together with interest thereon from the date hereof until paid at the rate of six (6) per cent per annum, payable semi-annually on the 1st days of January and July of each year, said interest evidenced by and to be paid upon the surrender of the coupons hereto attached as they severally become due, both principal and interest payable in lawful money of the United States of America, at the Fiscal Agency of the State of Oklahoma, in the City of New York, in the State of New York; or, in the event of the discontinuance of such Agency, then at the National City Bank, in said city and state of New York.

This Bond is one of a series numbered from One to Fourteen, both inclusive, of like date and tenor, aggregating the principal sum of Thirteen Thousand Five Hundred ($13,500.00) Dollars, and is issued for the purpose of funding a like amount of the legal outstanding judgment indebtedness of said Board of Education, under Article 3, Chapter 7, Revised Laws of Oklahoma, 1910, and other Laws of the State of Oklahoma, supplementary and amendatory thereto.

The Full Faith, credit and resources of said Board of Education are hereby irrevocably pledged to the payment of this Bond.

It Is Hereby Certified and Recited that all acts, conditions and things required to be done, precedent to and in the issuance of this Bond have been properly done, happened and been performed in regular and due form and time as required by law, and that the total indebtedness of said Board of Education, including this Bond and the series of which it forms a part, does not exceed any constitutional or statutory limitation, and that due provision has been made for the collection of an annual tax sufficient to pay the interest on this Bond as it falls due and also to constitute a sinking fund for the payment of the principal hereof at maturity.

In Witness Whereof, said Board of Education has caused this Bond to be signed by its President, attested by its Clerk, and the seal of said Board of Education to be affixed hereto this 25th day of January, A. D. 1921.

[Signed] L. R. Springer,
[Seal]　　　　President of Board of Education.
Attest:
[Signed] E. D. Peck, Clerk, Board of Education.
Approved and signed by me in open Court, this 7th day of March A. D. 1921.
[Signed] J. C. Robberts,
Judge of the District Court of Oklahoma in and for the County of Alfalfa.
Attest:
[Signed] J. W. Rackley, Court Clerk.
Countersigned:
[Signed] H. B. Eaton, County Treasurer.
State of Oklahoma, County of Alfalfa, ss.

We, the undersigned, County Attorney and County Clerk, respectively, of said County and State, in which the Board of Education of the Town of Carmen is situate, hereby certify that the within Bond.

Coupons Nos. 15 to 40 matured consecutively January 1 and July 1 in each of the years 1929 to 1941, inclusive.

No proceeding or action of any kind was instituted within thirty days from June 4, 1921, the date such bonds were approved by the Attorney General and ex-officio bond commissioner of Oklahoma, for the purpose of contesting in any manner the legality of such bonds.

About July 5, 1921, such bonds were delivered to the owners and holders of such judgment indebtedness. On December 14, 1921, plaintiff purchased bonds Nos. 3 to 12, inclusive, from the Fidelity National Bank of Kansas City and paid therefor par and accrued interest. Before purchasing such bonds, plaintiff made no inquiry or investigation of any kind of the records of Alfalfa county to ascertain other outstanding indebtedness or the assessed valuation of the school district. At the time of such purchase, plaintiff relied upon the recitals in such bonds and certificates attached thereto, and upon such funding bond judgment.

At the times judgments in No. 2046 and No. 2066 were rendered, there was on file in the office of the county clerk of Alfalfa county an assessment of school district No. 77 which showed that the assessed valuation of such district for the year 1920, approved by the excise board of that county on September 3, 1921, was $1,435,682.

At the time such funding bonds were issued and delivered, there was an outstanding bond issue of such school district dated April 1, 1920, aggregating $72,000, and such facts were shown in school District Bond

---

is one of a series of bonds issued by said Board of Education pursuant to law, and that the entire issue of said Bonds is within the debt limit imposed upon said Board of Education by the Constitution and laws of the State of Oklahoma.

Witness our respective hands and the official seal of said County this 12 day of March, A. D. 1921.

[Signed] J. Milford Hill,
County Attorney.

[Seal] [Signed] Edith Couch,
County Clerk.

State of Oklahoma, County of Alfalfa, ss.

I, the undersigned, the duly qualified and acting County Clerk of said County, in this State, hereby certify that I have duly registered the within bond in my office on this the 14 day of March, 1921.

Witness my hand and the official seal of said County, the date above written.

[Signed] Edith Couch,
[Seal] County Clerk.

State of Oklahoma, County of Alfalfa, ss.

I, the undersigned, the duly qualified and acting Clerk of the within named Board of Education of Carmen, in said County and State, hereby certify that I have duly registered the within Bond in my office on this 15 day of March, 1921.

Witness my hand and the seal of said Board of Education the date above written.

[Signed] E. D. Peck,
[Seal] Clerk, Board of Education.

State of Oklahoma, County of Alfalfa, ss.

I, the undersigned, the duly qualified and acting Treasurer of Alfalfa County, Oklahoma, in which the Board of Education of the Town of Carmen, Alfalfa County, is situated, hereby certify that on the 11 day of March, 1921, I registered the within Bond in a book kept for that purpose; that I entered the number, the date, the name of the payee, the fund upon which it is drawn and the amount.

[Signed] H. B. Eaton, County Treasurer.

United States of America, State of Oklahoma, ss.

I, the undersigned, the State Auditor of said State, hereby certify that I have duly registered the within bond in my office on this the 12 day of April, A. D. 1921, according to law.

Witness my hand and seal the date above written.

[Signed] F. C. Carter,
[Seal] State Auditor.

Great Seal of the State of Oklahoma, 1907
Number
3
State of Oklahoma
County of Alfalfa

The Board of Education
of the Town of Carmen
Being Independent School
District No. 77.

Funding Bond of 1921
$1000.00
Dated January 25th, 1921
Due January 25th, 1941

Interest 6% per Annum
Payable Semi-Annually on
the 1st days of January
and July.

Principal and Interest payable at
the Oklahoma Fiscal Agency, New
York City, N. Y.

State of Oklahoma
Office of the Attorney General
Bond Department                    Jun. 4, 1921.

I Hereby Certify that I have examined a certified copy of the record of proceedings taken preliminary to and in the issuance of the within Bond; that such proceedings and such Bond show lawful authority for the issue and are in accordance with the forms and methods of procedure prescribed and provided by me for the issuance of bonds of like kind; and that said Bond is a valid and binding obligation according to its tenor and terms, and, under the provisions of law in effect March 24, 1910, requiring the certificate of the Bond Commissioner of the State of Oklahoma, thereon, is incontestable in any Court in the State of Oklahoma unless suit thereon shall be brought in a Court having jurisdiction of the same within thirty days from the date of this approval of said Bond appearing in the caption hereto.

[Signed] S. P. Freeling, Attorney General,
Ex-Officio Bond Commissioner
of State of Oklahoma.

The following is a copy of coupon due July 1, 1928.

On the 1st day of July, 1928,

The Board of Education of the Town of Carmen, 30.00

Being Independent School District No. 77
of the State of Oklahoma,

Promises to pay to the bearer the sum of Thirty Dollars, at the Fiscal Agency of the State of Oklahoma, in the City and State of New York; or in the event of the discontinuance of such Agency, then at the National City Bank in said City and State of New York, for the interest due that day on its Funding Bond of 1921, of One Thousand Dollars, dated January 25, 1921.

L. R. Springer, President.

Attest:
E. D. Peck, Clerk.

Register No. 2, an official record in the office of the county treasurer of Alfalfa county.

Defendants offered to prove that the indebtedness sued upon in No. 2046 had not been included in the financial statement and estimate filed by the school board and approved by the excise board for the year in which such indebtedness was incurred. Upon objection of plaintiff, this offer was denied.

Since July 1, 1928, such boards and officials have refused to make the necessary estimates and tax levies to pay the interest on, and to create a sinking fund for the payment of the principal of such bonds, and will continue to do so in the future because of the decision of the supreme court in Eaton v. Railway Co., supra.

The trial court entered a decree granting the relief prayed for, and the defendants have appealed.

Section 26 of article 10 of the Oklahoma Constitution in part provides:

"No county, city, town, township, school district, or other political corporation, or subdivision of the State, shall be allowed to become indebted, in any manner, for any purpose, to an amount exceeding, in any year, the income and revenue provided for such year, without the assent of three-fifths of the voters thereof, voting at an election, to be held for that purpose, nor in cases requiring such assent, shall any indebtedness be allowed to be incurred to an amount including existing indebtedness, in the aggregate exceeding five per centum of the valuation of the taxable property therein, to be ascertained from the last assessment for State and county purposes previous to the incurring of such indebtedness. * * * *"

Section 28 of article 10 of the Oklahoma Constitution in part provides:

"Sinking funds of town, counties, etc. Counties, townships, school districts, cities, and towns shall levy sufficient additional revenue to create a sinking fund to be used, first, for the payment of interest coupons as they fall due; second, for the payment of bonds as they fall due; third, for the payments of such parts of judgments as such municipality may, by law, be required to pay."

Section 29 of article 10 of the Oklahoma Constitution in part provides:

"No bond or evidence of indebtedness of this State shall be valid unless the same shall have endorsed thereon a certificate, signed by the Auditor and Attorney General of the State, showing that the bond or evidence of debt is issued pursuant to law and is within the debt limit. No bond or evidence of debt of any county, or bond of any township or any other political subdivision of any county, shall be valid unless the same have endorsed thereon a certificate signed by the County Clerk, or other officer authorized by law to sign such certificate, and the County Attorney of the county, stating that said bond, or evidence of debt, is issued pursuant to law, and that said issue is within the debt limit."

Section 4267, C. O. S. 1921 (section 362, Revised Laws Okla. 1910), provides that municipalities, including towns, townships and school districts, are empowered to refund "indebtedness, including bonds, judgments and warrants," but the same "shall not exceed in amount the actual amount of outstanding indebtedness, inclusive of attached coupons.".

Section 4269, C. O. S. 1921, provides that the officers of the municipality shall give at least ten days' notice by publication and by posting of the time when the municipality will present to the state district court an application to determine the amount of the legal outstanding indebtedness of the municipality and ask the court to hear and determine the same, and to fix, sign and issue funding bonds in an amount sufficient to pay such indebtedness; and that any person interested in the proceedings may appear and remonstrate against the issuance of such bonds.

Section 4270, C. O. S. 1921, provides that on the date so fixed, the authorized officer of the municipality shall appear before the court named and make due proof of the "existence, character and amount of the outstanding legal indebtedness of said municipality" to the "satisfaction of the court"; that "on such proof being made the court shall cause to be made, upon the records of the court, a statement and finding to that effect and shall then, in open court, proceed to sign each bond to be issued, up to the amount of said indebtedness so proven and approved, and shall, after expiration of the time for taking appeals, if no appeal be taken, deliver the same to the treasurer of said municipality issuing the same, who shall be chargeable therefor, and shall be liable on his official bond for said bonds."

This section further provides for an appeal from the judgment of the district court, and that, in the event of an appeal, the bonds

shall not be delivered to the treasurer of the municipality until the final determination of such appeal.

Section 4271, C. O. S. 1921, provides that the bonds shall be signed and attested by certain designated municipal officers.

Section 4272, C. O. S. 1921, provides that when "a refunding has been agreed upon, it shall be the duty of the proper officers to issue such bonds at the rate agreed upon, to the holder of such indebtedness, in the manner prescribed," but that no bond shall be issued until the proper evidence of the indebtedness for which issued shall be delivered up and canceled.

Section 4273, C. O. S. 1921, provides for the registration of the bonds in the office of the clerk of the municipality, county clerk and state auditor.

Section 4274, C. O. S. 1921, provides for the levy of taxes to pay the bonds.

Sections 4283—4—5, C. O. S. 1921, provide that the Attorney General shall be ex-officio bond commissioner and that he shall prepare uniform forms and prescribe the method of the procedure in all cases where it is decided to issue public securities for bonds in any municipality, and that it shall be his duty to "examine into and pass upon any such securities so issued, and any such securities when declared by the certificate of said bond commissioner to be issued in accordance with the law and procedure so provided, shall be incontestable in any court in the state of Oklahoma, unless suit thereon be brought in a court having jurisdiction of same within thirty days from the date of approval thereof by the bond commissioner" and that no bond issued by any political or municipal subdivision of the state shall be valid without the certificate of such bond commissioner.

Counsel for defendants contend: (1) That the judgment in No. 2046 was void because the petition therein failed to state a cause of action and because no process was issued and served upon the board of education and the attempt, on the part of the board of education, to enter its appearance and confess judgment, was unauthorized. (2) That the indebtedness sought to be funded was invalid, and therefore the funding bond judgment is void and is subject to collateral attack. (3) That the funding bond judgment was void because, when considered with other outstanding indebtedness of the school district, it exceeded 5% of the assessed valuation of the school district, and violated the 5% limitation prescribed by sec-

tion 26 of article 10 of the Oklahoma Constitution. (4) That records were required to be kept by the county officials and the school board showing the assessed valuation of the school district and its existing indebtedness; that such records were easily and readily ascertainable and that purchasers of such bonds were charged with knowledge of the contents thereof, notwithstanding the recitals in the funding judgment and in the bonds themselves. (5) That neither the Constitution nor laws of Oklahoma authorize the endorsement on funding bonds of any recitals as to their validity, and that the school district is not estopped, on account of the recitals in the bonds and the certificates attached thereto, from showing the invalidity of the indebtedness refunded.

Defendants' contentions 1 and 2 may be considered together. They are supported by the decisions of the Supreme Court of Oklahoma in Eaton v. Railway Co., supra, and Faught v. City of Sapulpa, 145 Okl. 164, 292 P. 15. These cases, however, were both decided long after the bonds in the instant case had been issued and delivered and had passed into the hands of bona fide purchasers.

Where municipal bonds have been issued and delivered, under the statute of a state, and thereafter the state courts have rendered decisions holding bonds issued under like circumstances to be invalid, a federal court is not bound by such state court decisions, and it is not only the right but the duty of such federal court, in passing upon the validity of such bonds, to exercise an independent judgment. Folsom v. Township Ninety-six, 159 U. S. 611, 16 S. Ct. 174, 40 L. Ed. 278; Carroll County v. Smith, 111 U. S. 556, 4 S. Ct. 539, 28 L. Ed. 517; Burgess v. Seligman, 107 U. S. 20, 2 S. Ct. 10, 27 L. Ed. 359; Pine Grove Township v. Talcott, 19 Wall. 666, 22 L. Ed. 227; Mothersead v. U. S. F. & G. Co. (C. C. A. 8) 22 F.(2d) 644; Fetzer v. Johnson (C. C. A. 8) 15 F.(2d) 145.

The validity of municipal bonds arising in a suit in a federal court will be determined by the law as judicially declared by the highest court of the state when the bonds were issued, and the rights and obligations of the parties, which accrued under such a state of the law, will not be affected by a different course of judicial decisions subsequently rendered, any more than by subsequent legislation. Douglas v. County of Pike, 101 U. S. 677, 25 L. Ed. 968; Wilkes County v. Coler, 180 U. S. 506, 531, 21 S. Ct. 458, 45 L. Ed. 642; Id., 190 U. S. 107,

23 S. Ct. 738, 47 L. Ed. 971; Loeb v. Columbia Township, Trustees, 179 U. S. 472, 490–493, 21 S. Ct. 174, 45 L. Ed. 280; First National Bank v. Obion County (D. C. Tenn.) 3 F.(2d) 623, 627; Thompson v. Perrine, 103 U. S. 806, 26 L. Ed. 612.

The opinions of the Supreme Court in Central Land Co. v. Laidley, 159 U. S. 103, 111, 16 S. Ct. 80, 40 L. Ed. 91, and Ross v. Oregon, 227 U. S. 150, 33 S. Ct. 220, 57 L. Ed. 458, to the effect that a decision of a state court overruling its prior decision and determining the rights of the parties contrary to its decisions in force when such rights accrued does not present a question of federal right under the contract clause of the Constitution of the United States (article 1, § 10, cl. 1), do not in any wise limit or overrule the doctrine of the cases above cited. Loeb v. Columbia Township, supra, page 493 of 179 U. S., 21 S. Ct. 174.

It follows that the decisions relied upon by counsel for defendants are not controlling and it therefore becomes necessary to determine the state of the applicable decisions of the Supreme Court of Oklahoma at the time the bonds in question were issued and delivered. It may be noted, in passing, that all of the procedural requirements in connection with the issuance and delivery of the bonds in question, including the proceeding leading up to the funding judgment, were carried out in strict accord with the statutory requirements and the existing decisions of the Supreme Court of Oklahoma.

In State ex rel. Board of Education v. West, 29 Okl. 503, 118 P. 146, 147, the court said:

"There seems to be no question as to the regularity of the refunding proceedings under the act of 1905, but the Attorney General bases his refusal to approve the proposed bond issue upon the ground that that act, if extended to and put in force at all by section 2 of the schedule to the Constitution, must be held to be modified by the law creating the office of bond commissioner to the extent of authorizing the Attorney General to examine the refunding proceedings and reject the issue if in his opinion any part of the indebtedness sought to be refunded is illegal, notwithstanding the district court may have judicially found to the contrary. This position cannot be sustained. * * * The act under which the bonds were issued expressly provides for a proceeding in court against all the parties who may be prejudicially affected by the issue of the bonds to obtain a judicial determination and judgment as to the validity and regularity of the indebtedness to be funded, which judgment constitutes a final and conclusive basis for further action by any public official whose acts are essential to the validity of the bonds. Section 2 provides for giving notice of the application, and expressly provides that any person interested may remonstrate against the issuance of the same. Section 3 provides that the bonds cannot be delivered until after the expiration of the time for taking an appeal, and further expressly provides that appeals from the judgment of the court shall be allowed as provided by law, and, if an appeal be taken, the bonds cannot be delivered to the treasurer of the municipality until the final determination of the appeal. Every step essential to a contested litigation is provided. The parties to that litigation are the officers of the district or municipality who seek to exercise the power to issue the bonds on the one hand, and the taxpayers and inhabitants of the municipality on the other. The inhabitants and taxpayers are the members of the corporation, the officers are the duly chosen official representatives of the corporation and the corporation itself is but an instrumentality of the state for the transaction of public business. When a judgment in such a proceeding is rendered, it necessarily binds and concludes all these. The hearing is had before the court which exercises the judicial authority of the state, and the judgment rendered in the proceeding is a judgment by the state that its instrumentality and the chosen officers and representatives thereof are acting according to law, and that the warrant indebtedness sought to be funded is valid; that the bonds proposed to be issued, signed, and attested by the court are the valid and binding obligations of the municipality; and that they are issued with the final sanction of a judgment of a competent court which has decided every question in relation to their validity. * * * It is the opinion of the court that the decision of the district court validating the warrants and authorizing the funding of the same and signing the funding bonds remaining unappealed from concludes the question as to the validity of the refunding issue, and forecloses the Attorney General from reversing the judgment thus solemnly reached. Territory v. Hopkins, 9 Okl. 133, 59 P. 976; Board of Commissioners of Day County v. State of Kansas, 19 Okl. 375, 91 P. 699."

In Prince v. St. L. & S. F. Ry. Co., 110 Okl. 141, 237 P. 106, 110, the court said:

"The recital in the journal entry of judgment, that the bonds to be issued to fund the said indebtedness, together with all other outstanding indebtedness of the board of education, do not exceed any constitutional or statutory limitation of the state, is the solemn finding and judgment of a court of competent jurisdiction, made after full hearing had, after due legal notice given to the defendant and all others interested to be present and remonstrate if they so desired, and, the defendant having been duly served with notice as required by the statute to be present, and failing so to do, defendant cannot now be heard to contest the finding of the court at the hearing of the application.

"The journal entry of judgment contained all the necessary averments and findings required by the Constitution and statutes of the state to validate the bonds, and, the judgment of the court being not appealed, such judgment became final, and is not subject to collateral attack."

Other decisions of the Supreme Court of Oklahoma to the same effect are: Territory ex rel. Jones v. Hopkins, 9 Okl. 133, 59 P. 976; Board of Commissioners of Day County v. State of Kansas, 19 Okl. 375, 91 P. 699; State ex rel. Board of Education v. West, 29 Okl. 503, 118 P. 146; Lawton v. Ayres, 40 Okl. 524, 139 P. 963; Hume v. Wyand, 68 Okl. 261, 173 P. 813; Board of Education v. Short, 89 Okl. 2, 213 P. 857; Schulte v. Board of County Com'rs, 119 Okl. 261, 250 P. 123.

From these decisions, it is clear that the funding bond statute makes provisions for a judicial investigation, determination and judgment with respect to the validity and regularity of the indebtedness sought to be funded, and that a final judgment in such proceeding is "a judgment by the state that its instrumentality and the chosen officers and representatives thereof are acting according to law, that the * * * indebtedness sought to be funded is valid; that the bonds proposed be issued, signed and attested by the court are the valid and binding obligation of the municipality; and that they are issued with the final sanction of the judgment of a competent court which has decided every question in relation to their validity." It follows that, if the decisions of the Supreme Court of Oklahoma in force at the time the bonds in question were issued and delivered are to be followed, the judgment in the funding case must be accepted in this, a collateral proceeding, as a final and conclusive determination that the judgment against the dis-

trict was a valid indebtedness and that the funding bonds issued to refund the same were issued according to law and were valid.

■ Defendants' third contention is that the bonds were invalid because they exceeded the limitations provided by section 26 of article 10 of the Oklahoma Constitution. Section 26 contains two limitations: First, a general limitation that the indebtedness of a municipality in any year shall not exceed its income and revenue provided for such year without the assent of three-fifths of the voters of the municipality voting at an election held for that purpose. Second, that an indebtedness incurred with the assent of three-fifths of such voters, together with the municipality's existing indebtedness, shall not exceed 5% of the value of the taxable property of such municipality, as shown by the last assessment previous to the incurring of such indebtedness. Faught v. City of Sapulpa, 145 Okl. 164, 292 P. 15, 24, 25.

The 5% limitation has no application unless an indebtedness is sought to be incurred in excess of the income and revenue provided. An indebtedness within the income and revenue provided, although it, together with the existing indebtedness, exceeds 5% of the assessed valuation of the municipality as shown by the last assessment, is nevertheless valid. Faught v. City, supra, 145 Okl. 164, 292 P. 15, page 24.

■ In considering defendants' third contention, we start with the premise that the original indebtedness was valid because it was so adjudged in the funding bond proceeding. It was, of course, created before the judgment in No. 2046 was obtained against the district. The exact date does not appear. Bonds which are issued to fund a valid indebtedness neither create any debt nor increase the debt of the municipality which issues them. They merely change the form of an existing obligation. In re Menefee, 22 Okl. 365, 97 P. 1014; Board of Education v. West, supra; City of Huron v. Second Ward Sav. Bank (C. C. A.) 86 F. 272, 49 L. R. A. 534; Independent School Dist. v. Rew (C. C. A.) 111 F. 1, 55 L. R. A. 364; Board of Com'rs of Lake County v. Keene Five-Cent Sav. Bank (C. C. A.) 108 F. 505; 44 C. J. p. 1132, § 4065.

In Board of Education v. West, supra, the court said:

"There is no inconsistency between the Statutes of 1905 and section 26, art. 10, of the Constitution. It is true that section 26 limits the indebtedness which may be legally created without a popular vote, but it has no

bearing on proceedings for the refunding of an indebtedness once legally created, except in so far as it lays down the rule that the court must follow in determining whether the original indebtedness was legally created.

"Funding bonds are issued concurrently with the cancellation of warrants of the municipality, and a municipality does not by their issue become further indebted, provided the warrants themselves represent a valid indebtedness. No new debt is incurred by a mere change in the form of the existing debt. In re Menefee, 22 Okl. 365, 97 P. 1014. Mr. Chief Justice Williams, who prepared the opinion in the Menefee Case, supra, said:

" 'The question further arises as to whether or not the issuing of the funding bonds created a debt. * * * It has frequently been held that, where bonds have been issued for the express purpose of liquidating an outstanding indebtedness, that such bonds neither created nor increased the public debt, but simply changed its form.'

"In support of this proposition many authorities are cited."

■ Since the bonds in question were issued to fund a judgment conclusively determined to be a valid indebtedness by the judgment in the funding bond proceeding, the bonds in the instant case did not create any debt nor increase the debt of the municipality and therefore it is wholly immaterial that such funding bonds, together with the existing indebtedness at the time they were issued, exceeded 5% of the assessed valuation of the school district as shown by the assessment for the year 1920. The contention that the original indebtedness was not within the income and revenue provided for the year in which it was created is likewise effectually foreclosed by the judgment in the funding proceeding adjudging the validity of such indebtedness.

■ The fourth and fifth contentions of defendants concern the effect of the funding proceeding judgment and the recitals in the certificate attached to, and in the bonds themselves. The rights of bona fide holders, who purchase such bonds in reliance upon the judgment in the funding proceeding and of the recitals in the bonds and the certificate attached thereto, are dependent upon principles of general commercial law upon which it is the right and the duty of a federal court to exercise an independent judgment. Pana v. Bowler, 107 U. S. 529, 541, 2 S. Ct. 704, 27 L. Ed. 424. Therefore, we are not bound by the decisions of the Supreme Court of Oklahoma in Faught v. City of Sapulpa, supra, and Eaton v. Railway Co., supra, as to the effect of such judgment and recitals.

■ It is well settled that, where a municipal corporation has lawful authority to issue bonds on condition that certain facts exist or certain acts be done, and the statute entrusts the power and imposes the duty upon an official or officials to ascertain, determine and certify the existence of such facts at the time of issuing the bonds, the certificate of such official or officials will estop the municipality as against a bona fide holder of such bonds from proving its falsity to defeat them (Independent School Dist. v. Rew [C. C. A. 8] 111 F. 1, 55 L. R. A. 364), where there is nothing on the face of the bonds to show that the recital is untrue (Gunnison County v. Rollins, 173 U. S. 255, 270, 271, 19 S. Ct. 390, 43 L. Ed. 689; Chaffee County v. Potter, 142 U. S. 355, 363, 12 S. Ct. 216, 35 L. Ed. 1040).

It was held in Faught v. City of Sapulpa, supra, that the provisions of section 29 of article 10, above set out, do not apply to refunding bonds. Since other recitals effectually estop the defendants, we deem it unnecessary to determine the effect of the certificates of the county auditor and county attorney, affixed to such bonds pursuant to such section 29.

■ There can be no doubt that the funding bond statute, as interpreted at the time the bonds in the instant case were issued, required the officers of a municipality desiring to issue funding bonds to bring a judicial proceeding and to give notice thereof to persons adversely interested, and entrusted the power and imposed the duty upon the district court in which such proceedings were brought to inquire into and determine the validity of the indebtedness sought to be refunded and the validity of the bonds to be issued, and to declare such facts by its solemn judgment and by the district judge affixing his signature to the bonds. Gardner v. School Dist. 87, 34 Okl. 716, 126 P. 1018; Board of County Com'rs v. State of Kansas, 19 Okl. 375, 91 P. 699, 711. In the last cited case, the court said:

"One other ground of defense, the fourth, as set forth in defendant's answer, remains for consideration, which, in substance, is that the bonds issued were in excess of 4 per cent. of the last-assessed valuation of the taxable property in the county. The answer alleges that such valuation was $469,289.77, and that, considering the outstanding indebtedness of

the county not funded, together with taxes levied and uncollected, and all other property, money, and resources belonging to said county July 10, 1900, not more than $11,200 of the bonds of said county could, at that time, have been lawfully issued, and that therefore $5,600 of such bond issue was illegal and void. By this defense the defendant seeks to try over again a question that was of paramount importance and before the court for consideration when it authorized the issuance of the bonds July 10, 1900. The record shows that at the time the court authorized the issuance of said bonds it found that the amount including outstanding indebtedness did not exceed 4 per cent. of the assessed valuation of the taxable property of Day county, according to the last assessment valuation of the assessor of said county, and the question here presented is whether or not that question may be retried in this action for the purpose of defeating a part of the bond issue of July 10, 1900. Touching this question, this court, in the case of the Territory v. Hopkins, 9 Okl. 149, 59 P. 980, said:

" 'The court having determined the validity of the bonds involved in this proceeding, and having decreed that they are valid obligations and issued in strict conformity with the laws of this territory and no objections or exceptions having been made to the issuance thereof; and no appeal having been taken therefrom, the decree and judgment of the court is therefore final and conclusive upon all matters put directly in issue, tried, and determined in that proceeding. This doctrine has been clearly enunciated and uniformly upheld by the decisions of the Supreme Court of the United States.'

"The soundness of this determination by this court is questioned by counsel for plaintiff in error, who base their conclusions upon the proposition that the district court, when hearing a question touching the issuance of funding bonds, does not reach a conclusion which in effect amounts to a judgment. If this is a correct conclusion, we can see no purpose in having the question of the issue of bonds brought before the court at all. Under the statute the court must hear and determine the question as to whether or not the issuance of such bonds is authorized under the law, and it would seem that, when a court of competent jurisdiction has before it a legal question to determine, and has heard and determined that question, such determination, unappealed from, is thereafter res adjudicata. * * * The recitals in the bonds from which the coupons were

taken were that they were issued pursuant to the laws of Oklahoma. They bore the unquestioned signature of the officials of Day county, together with that of the judge of the district court of that county, attested by the clerk and seal of the court; also, the indorsement on the back, by the territorial auditor who certified such bonds to be legally and regularly issued in accordance with an act of the Legislature of March 12, 1897. It has been the universal holding of the courts that, where negotiable bonds or securities on their face import by recital a compliance with the law under which they were issued, the purchaser is not bound to look further for evidence of compliance with the law authorizing their execution. In this case they were not only issued as the act of the officials of Day county, but, in addition, the bonds recite that they are issued as the act of the district court and therefore go upon the market as instruments, the authority to issue which has been judicially determined."

Furthermore, the statute creating the bond commissioner likewise requires him to prescribe uniform forms and methods of procedure and provides that no bond shall be valid until approved by him, and that such bond, "when declared by the certificate of said bond commissioner to be issued in accordance with the law and procedure so provided, shall be incontestable * * * unless suit thereon be brought * * * within thirty days from the date" of such approval.

In Board of Education v. Short, 89 Okl. 2, 213 P. 857, 861, the court said:

"The law authorizing bonds of this character is found in sections 7835 to 7843, inclusive, R. L. 1910, as limited by article 10 of section 26, Constitution of the state. If the Attorney General, under the statute, after examining into the same, approves the bond issue, and no suit is filed questioning the legality of the same within 30 days, the law makes the issue conclusive, as to the municipality and all persons interested in the same."

It is true that the Constitution requires the assessed valuation to be ascertained from the last preceding assessment. But neither it nor the statutes provide for any such record of all existing indebtedness. To determine whether the indebtedness sought to be refunded was valid, the prospective bond purchaser would have to go through the proceeding leading up to the funding bond judgment, learn the year when the original debt was created, examine the budget or estimates for such year, and ascertain whether

such indebtedness was within the income and revenue provided for such year. If it did exceed the income and revenue for such year, his next inquiry would be whether, with existing indebtedness, it exceeded 5% of the value of the taxable property of the district. To ascertain these facts, the bond buyer would require the services of a skilled auditor. Clearly, the funding statute does not contemplate such investigation. The very purpose of the judgment in such funding proceeding and the certificate of approval by the Attorney General is to set such matters at rest and to furnish a readily available record, beyond which the bond buyer need not inquire. Board of County Com'rs v. Kansas, supra.

The power to issue funding bonds was granted under certain requisite circumstances. The power to inquire into these circumstances and determine the facts was delegated to the district court and the Attorney General, and they found and certified the existence of those requisite facts upon which the power depended.

Such being the facts, the plaintiff undoubtedly has the right to rely upon the findings and adjudication set forth in the funding judgment, upon the fact that the bonds were signed by the court which rendered such judgment, upon the certificate of the Attorney General, and upon the fact that no proceedings had been brought to contest the validity of such bonds within thirty days after the date of such certificate.

We conclude that the defendants are precluded by the judgment in the funding proceeding; and by the recitals in the bonds and the certificates attached thereto, from questioning the validity of the original indebtedness, and of the bonds issued to refund such indebtedness.

The decree is affirmed.

## Opinion in No. 336.

This suit involves the validity of thirty-four $1,000 bonds issued by the board of education of the town of Helena, Alfalfa county, Oklahoma, dated January 1, 1922, and jurisdiction is predicated on diversity of citizenship.

Calvin O. Smith, as the owner of such bonds, brought this suit against the board of education of the town of Helena, the excise board of Alfalfa county, and the officers and individual members of such boards to secure the same relief as was sought in No. 335. From a decree in favor of plaintiff, defendants have appealed.

The facts with respect to the judgments against the school district, the funding bond judgment and the funding bonds are substantially the same as the facts in No. 335, except in the particulars hereinafter noted.

The Brown-Crummer Investment Company, purchased such issue of funding bonds from C. Edgar Honnold, in the regular course of business, paying $955 per thousand, plus accrued interest. The Brown-Crummer Company sold such bonds in the regular course of business to Wells-Dickey & Company, of Minneapolis. About June 1, 1928, the Brown-Crummer Company repurchased such bonds from Wells-Dickey & Company and later resold them to Honnold at $955 per thousand, plus accrued interest. On June 8, 1928, plaintiff purchased such bonds from Honnold. Each bond showed on its face that it was one of a total issue of $34,000. The assessed valuation of the school district for 1921 was $417,977.

Proof was offered to show that some of the items, making up the claims on which the original judgments against the school district were obtained, were invalid.

There was no proof introduced or tendered showing that the original indebtedness, on which the claims against the school district were based, except certain items which were alleged to be fictitious, were in excess of the revenue provided for the year in which such debts were incurred.

Counsel for defendants make the same contentions here as they asserted in No. 335, and what we have said in the opinion in that case applies equally to such contentions made here.

Counsel for defendants contend that the transfer to plaintiff was merely colorable and was made for the purpose of giving jurisdiction to the federal court; and that plaintiff is not a bona fide purchaser for value.

The proof established that the sale by Honnold to plaintiff was real and absolute and not merely colorable. Under such circumstances, the courts, in passing on the question of federal jurisdiction, will not inquire into the motives which actuated the parties in making the transfer. Black & White Taxicab Co. v. B. & Y. Taxi. Co., 276 U. S. 518, 524, 48 S. Ct. 404, 72 L. Ed. 681, 57 A. L. R. 426; South Dakota v. North Carolina, 192 U. S. 286, 310, 24 S. Ct. 269, 48 L. Ed. 448; Lehigh Mining & Mfg. Co. v. Kelly, 160 U. S. 327, 336, 16 S. Ct. 307, 40 L. Ed. 444; Cross v. Allen, 141

U. S. 528, 533, 12 S. Ct. 67, 35 L. Ed. 843; McDonald v. Smalley, 1 Pet. 620, 7 L. Ed. 287; Dickerman v. Northern Trust Co.; 176 U. S. 181, 191, 192, 20 S. Ct. 311, 44 L. Ed. 423; Rojas-Adam Corp. v. Young (C. C. A. 5) 13 F.(2d) 988, 989; City of Livingston v. Monidah Trust (C. C. A. 9) 261 F. 966, 971.

■ The possession of the bonds, their genuineness not being disputed, made out a prima facie case for the plaintiff, and the burden was upon the defendants to show that he was not a bona fide purchaser and holder. Presidio County v. Noel-Young Bond & Stock Co., 212 U. S. 58, 70, 29 S. Ct. 237, 53 L. Ed. 402; Village of Kent v. Dana (C. C. A. 6) 100 F. 56; Toon v. Wapinitia Irr. Co., 117 Or. 374, 243 P. 554, 557; 44 C. J. p. 1259, § 4267. Defendants did not meet that burden. One who, with knowledge of defenses thereto against the original payee or holder, acquires the title to municipal bonds from an intermediate bona fide purchaser is entitled to the rights and title of the latter as such bona fide holder. Rondot v. Rogers Township (C. C. A. 6) 99 F. 202, 213; Gunnison County Com'rs v. Rollins, 173 U. S. 255, 274, 275, 19 S. Ct. 390, 43 L. Ed. 689; Marion County v. Clark, 94 U. S. 278, 286, 24 L. Ed. 59; Hill v. Scotland County (C. C.) 34 F. 208; 44 C. J. p. 1241, § 4231. The Brown-Crummer Company and the Wells-Dickey & Company were intermediate bona fide purchasers.

■ We conclude that Smith had the right to maintain this suit in the federal court and that he is entitled to the rights and title of a bona fide purchaser.

[14] Counsel for defendants contend that such bonds disclosed on their face that they were in excess of the 5% limitation of section 26, art. 10, of the Oklahoma Constitution. They predicate this contention upon the fact that the amount of the bond issue is more than 5% of the value of the taxable property of the district as shown by the 1921 assessment.

The judgment in the funding bond proceeding is a conclusive adjudication that the indebtedness refunded was valid. Since the original indebtedness funded was valid, the funding bonds neither created a new debt nor increased an existing indebtedness, and the limitations of such section 26 have no application to such bonds. Fairfield v. Rural Ind. School Dist. (C. C. A. 8) 116 F. 838, 844. Furthermore, if the indebtedness funded was valid otherwise, it is immaterial that the total bond issue exceeded 5% of the value of the taxable property of the district as shown by the last assessment previous to the date such bonds were issued. The question of whether the constitutional limitation was exceeded would have to be determined from the last assessment previous to the date the original indebtedness was incurred, and the status of the district's indebtedness at that time. Board of Com'rs of Lake County v. Keene Five-Cent Sav. Bank (C. C. A. 8) 108 F. 505, 514. There is no proof as to such assessment or indebtedness.

Moreover, the 5% limitation in such section 26 applies only to an indebtedness in excess of the current revenue and income created with the requisite assent of the voters of the school district at an election held for that purpose, and the proof in the instant case, except as to possibly three items aggregating $7,800 which were alleged to be fictitious, does not show that the original indebtedness was in excess of the income and revenue provided for the year in which it was created. It follows that defendants did not establish that the bonds exceeded the 5% limitation of section 26.

■ Finally, counsel for defendants contend that, through the inclusion of certain fictitious claims, the bonds were in effect exchanged at a discount of 20% instead of at par. They were issued to fund an indebtedness conclusively adjudged to be valid by the judgment in the funding bond proceeding. Furthermore, the fact that they were exchanged at less than par would constitute no defense to such bonds against a bona fide purchaser. Mercer County v. Hackett, 1 Wall. (68 U. S.) 83, 17 L. Ed. 548; Town of Newbern v. National Bank of Barnesville (C. C. A. 6) 234 F. 209, 221, L. R. A. 1917B, 1019.

The decree is affirmed.

The costs in each case will be adjudged against the defendants therein.